IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

LISA WILLIAMS,                              )
                                            )
                Plaintiff,                  )
                                            )
v.                                          )        Case No. CIV-12-205-HE
                                            )
MICHAEL ASTRUE,                             )
COMMISSIONER, SOCIAL                        )
SECURITY ADMINISTRATION,                    )
                                            )
                Defendant.                  )

## REPORT AND RECOMMENDATION

Ms. Lisa Williams lost her job, and she applied for disability benefits based on an inability to work because of severe mental impairments.[1] An administrative law judge found that these impairments limited the ability to work, but rejected the disability claim on grounds that the Plaintiff could perform her past relevant work.[2]

I.      Summary of Issues

Ms. Williams seeks judicial review of an administrative denial of benefits, and the Court must address three issues:

   A.      Rationale to Discount a Nurse's Opinions

           A nurse (Sue Rollins) provided treatment and assessed mental limitations. Although nurses are considered medical sources, the administrative law judge discounted Ms. Rollins's opinions because her credentials were inferior to

---

[1]      R. at pp. 60, 184-92.

[2]      R. at pp. 14, 17, 19.

those of three doctors who had given contrary assessments.  Did the ALJ err by relying on the superiority of the doctors' credentials?

*No*.  The ALJ could reasonably resolve the difference in assessments by giving greater weight to the opinions of three doctors whose credentials had surpassed those of Ms. Rollins.

B.    Assessment of Mental Capacity

Did the ALJ err by disagreeing with Sue Rollins in the assessment of mental limitations?

*No*.  The ALJ was entitled to reject Ms. Rollins's assessment and rely instead on the assessments by two psychologists and a psychiatrist.

C.    Credibility Analysis

The ALJ discounted the Plaintiff's complaints based in part on her prior felony convictions and affirmation of an ability to work when she sought unemployment benefits.  Did the ALJ err by relying on Ms. Williams's past convictions and representation that she could work when she sought unemployment benefits?

*No*.  The ALJ acted reasonably by relying on the Plaintiff's past felony convictions and representation that she could work.

Without any error in the analysis of Ms. Williams's credibility, her mental capacity, or Ms. Rollins's opinions, the Court should affirm.

II.    Standard of Review

The Court must decide whether:  (1) the factual findings were supported by substantial evidence, and (2) the correct legal standards were applied.[3]

_____

[3]      *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009).

III.    The Administrative Law Judge's Analysis of Ms. Rollins's Opinions

The administrative law judge found that the mental impairments had limited Ms. Williams to: (1) simple tasks with routine supervision, (2) superficial communication with supervisors and peers, and (3) an inability to relate to the general public.[4] For these findings, the judge relied on opinions by two psychologists (Dorothy Millican-Wynn and Cynthia Kampschaefer) and a physician (Adonis Al-Botros) and gave "very little weight" to the assessment of more severe limitations by a nurse (Sue Rollins).[5] In comparing the opinions, the judge relied on the inferiority of Ms. Rollins's qualifications to those of Doctors Millican-Wynn, Kampschaefer, and Al-Botros.[6]

Ms. Williams contends the judge should not have discounted the opinions by Ms. Rollins just because she was not a psychologist or physician. According to the Plaintiff, "specialty is only one factor to consider" and the judge should have considered other factors, such as the examining and treatment relationship, support for the opinion, and consistency.[7]

The Plaintiff's contention requires the Court to determine what Ms. Rollins thought and how it conflicted with the ALJ's assessment. This task is complicated by the Plaintiff's failure to identify the opinions that she is challenging.

---

[4]      R. at p. 17.

[5]      R. at p. 19.

[6]      *See* R. at p. 19.

[7]      Pl.'s Br. 5, ECF No. 13.

Ms. Rollins, a treating nurse, assessed multiple limitations on Ms. Williams's mental capacity.[8]  The ALJ discounted this assessment[9] and Ms. Williams argues that it should have been given greater weight.

Though discounting Ms. Rollins's opinions, the ALJ still found that Ms. Williams could not relate to the general public, could only relate superficially to supervisors and peers, and could only perform simple tasks with routine supervision.[10]  The Plaintiff does not say how these findings would have changed if the ALJ had given greater weight to Ms. Rollins's assessment.

The omission is compounded by Ms. Williams's failure to show an error in the ALJ's rationale.  The ALJ discounted Ms. Rollins's assessment because her academic credentials were inferior to those of Doctors Millican-Wynn, Kampschaefer, and Al-Botros.[11]  The administrative regulations permitted this contrast, stating:

> The fact that a medical opinion is from an "acceptable medical source" is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an "acceptable medical source" because, as we previously indicated in the preamble to our regulations . . ., "acceptable medical sources" "are the most qualified health care professionals."[12]

---

[8]      R. at p. 418.

[9]      *See supra* p. 3 (citing R. at p. 19).

[10]      R. at p. 17.

[11]      R. at p. 419; *see supra* pp. 3-4.

[12]      Social Security Ruling 06-03P, *Titles II and XVI:II and XVI:  Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies*, 2006
(continued...)

In light of this regulation, the rationale is sufficient when the ALJ relied on the inferiority of a nurse's credentials when compared to those of a psychologist or psychiatrist.[13]  Thus, the ALJ's explanation sufficed even though it was based solely on a comparison of credentials.

The Plaintiff argues that the explanation was too narrow because the ALJ should have discussed other factors, such as the nature of the nurse's role in the treatment, support for her opinion, consistency of the opinion, and the nurse's specialty.[14]  But ALJs need only give good reasons for the weight they give to medical opinions[15] and are under no obligation to discuss every regulatory factor.[16]  As discussed above, the difference in credentials was a *good reason* to adopt opinions by a psychiatrist and two psychologists and discount the conflicting opinions of a nurse.[17]

---

[12](...continued)
WL 2329939, at *5 (Aug. 9, 2006).

[13]    *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1164-65 (10th Cir. 2012) (holding that in deciding between GAF scores by a doctor and counselor, the ALJ could rely exclusively on the doctor's superiority in qualifications).

[14]    *See supra* p. 3 (quoting Pl. Br. 5, ECF No. 13).

[15]    *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (stating that the ALJ's only requirement was to give "good reasons in his decision for the weight he gave to the treating sources' opinions" (citation omitted)).

[16]    *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (stating that the court was unaware of any authority "requiring an ALJ's decision to apply expressly each of the six relevant factors in deciding what weight to give a medical opinion").

[17]    *See supra* pp. 4-5.

In summary, the administrative law judge adequately explained the weight given to Ms. Rollins's opinions and the decision to give greater weight to the contrary opinions by Doctors Millican-Wynn, Kampschaefer, and Al-Botros.

IV.    The Assessment of Residual Functional Capacity

Ms. Williams also challenges the administrative law judge's assessment of residual functional capacity on grounds it is not supported by substantial evidence. According to Ms. Williams, the evidence was insubstantial because it did not account for Ms. Rollins's opinions. As discussed above, however, the ALJ did not err by discounting the opinions of Ms. Rollins and relying more heavily on the opinions by *acceptable medical sources*.[18]

These sources were Dorothy Millican-Wynn, Cynthia Kampschaefer, and Adonis Al-Botros.

Dr. Al-Botros, a psychiatrist, examined Ms. Williams and reported that:

- her judgment, cognitive function, and abstract reasoning were intact and

- the GAF score was 75.[19]

A GAF score of 75 "indicates that '[i]f symptoms are present, they are transient and expectable reactions to psychosocial stressors' and there is 'no more than slight impairment in social, occupational, or school functioning.'"[20]

---

[18]    *See supra* pp. 3-6.

[19]    R. at pp. 367-68.

[20]    *Burk v. Astrue*, 2012 WL 3156313, at *2 (10th Cir. Aug. 6, 2012) (unpublished op.) (quoting Am. Psychiatric Ass'n, *Diagnostic and Statistic Manual of Mental Disorders* 34 (4th revised ed. (continued...)

6

Dr. Al-Botros's detailed report was provided to two psychologists, Dorothy Millican-Wynn and Cynthia Kampschaefer.[21] Dr. Millican-Wynn reviewed Dr. Al-Botros's report and translated his observations into an assessment that Ms. Williams could not relate to the general public but could perform simple tasks with routine supervision and relate only superficially to supervisors and peers.[22] Dr. Kampschaefer agreed.[23]

The opinions by Doctors Millican-Wynn and Kampschaefer, backed by Dr. Al-Botros's report, provided a reasonable basis for the administrative law judge to assess mental limitations. Like the two psychologists, the ALJ regarded Ms. Williams as unable to relate to the general public but able to perform simple tasks with routine supervision, relate superficially to supervisors and peers, and adapt to a work setting.[24]

These findings were reasonable based on Dr. Al-Botros's evaluation that Ms. Williams could exercise judgment, engage in cognitive function and abstract reasoning, and suffer no more than a slight impairment in social or occupational functioning.[25] This evaluation provided a reasonable basis for Doctors Millican-Wynn and Cynthia

---

[20](...continued)
2000)).

[21]     R. at pp. 389, 433.

[22]     R. at p. 393.

[23]     R. at p. 433.

[24]     *See supra* p. 3 (citing R. at p. 17).

[25]     *See supra* p. 6.

Kampschaefer to assess an ability to adapt to a work setting, perform simple tasks with routine supervision, and relate superficially to supervisors and peers.   In turn, the administrative law judge could reasonably assess Ms. Williams's mental capacity based on the evaluations by Doctors Millican-Wynn and Kampschaefer.   Although the Court might have weighed the reports differently, the administrative law judge had substantial evidence to balance the evidence as he did.

V.      Credibility Determination

In making his findings on residual functional capacity, the ALJ included mental limitations.[26]  But the ALJ implicitly declined to include at least some of the limitations that Ms. Williams thought she had.   The Plaintiff argues that these omissions constituted error,[27] but she is wrong.

A.      Ms. Williams's Contentions

In attacking the credibility findings, Ms. Williams alleges:  (1) improper reliance on old and irrelevant convictions involving larceny, driving under the influence of alcohol, and violation of a protective order; (2) inapt reliance on the receipt of state unemployment benefits; and (3) disregard of evidence suggesting believability, such as regular treatment for mental disorders, the need for "encouragement and prompting" to complete activities, and two hospitalizations with suicidal thoughts.[28]

---

[26]      *See supra* p. 3.

[27]      Pl.'s Br. 6-8, ECF No. 13.

[28]      Pl.'s Br. 7, ECF No. 13.

B.      Application of the Standard of Review to Credibility Findings

An administrative law judge's credibility determination is generally considered binding on review and will only be overturned when the evidence is insubstantial.[29]  Thus, even if the record would have supported a contrary conclusion, the Court is bound by the ALJ's findings if they are reasonable based on the evidence.[30]  Here, the ALJ's view of the evidence was reasonable.

C.      Felony Convictions for Larceny and DUI

The ALJ discounted the Plaintiff's complaints based in part on felony convictions for larceny and driving under the influence of alcohol.[31]  The Plaintiff argues that the convictions were not relevant to credibility and that the larceny conviction was too old.  These arguments are unconvincing.

In social-security cases, evidence can be considered *relevant* to credibility even when it would not have been inadmissible in court.[32]  But the convictions for larceny and DUI

---

[29]    *See Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990); *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010).

[30]    *See, e.g.*, *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012).

[31]    R. at pp. 17-18, 50-51, 58, 209.

[32]    *See* 42 U.S.C.A. § 405(b)(1) (West 2011 supp.) ("Evidence may be received at any hearing before the Commissioner of Social Security even though inadmissible under rules of evidence applicable to court procedure."); 20 C.F.R. §§ 404.950(c), 416.1450(c) ("The administrative law judge may receive evidence at the hearing even though the evidence would not be admissible in court under the rules of evidence used by the court.").

involved felonies;[33] thus, they would have been considered *relevant* even in a court bound by formal rules of evidence.[34]

Ms. Williams points out that the larceny took place in 1990.  Under the rules of evidence, the probative value of a conviction may diminish with time.[35]  But the passage of time does not strip the conviction of all relevance.[36]

Relevance is affected not only by the age of the conviction, but also by the nature of the offense.[37] Here the administrative law judge could reasonably consider larceny as a crime involving dishonesty.[38]

---

[33]     R. at pp. 54-55, 58, 208, 211.

[34]     *See* Fed. R. Evid. 609(a)(1); Oklahoma Evidence Code, Okla. Stat. tit. 12 § 2609(A)(1) (2006).

[35]     *See* Fed. R. Evid. 609(b)(1); Oklahoma Evidence Code, Okla. Stat. tit. 12 § 2609(B) (2006).

[36]     *See United States v. Lipscomb*, 702 F.2d 1049, 1062 (D.C. Cir. 1983) (*en banc*) ("probativeness does not suddenly vanish when the 10-year mark is reached" for past convictions).

[37]     *See United States v. Cathey*, 591 F.2d 268, 276 (5th Cir. 1979) ("The probative value of a prior conviction is a function of at least two factors, the nature of the past crime and the remoteness of the conviction.").

[38]     *See Mason v. State*, 756 P.2d 612, 614 (Okla. Crim. App. 1988) (stating that larceny of an automobile is a "crime involving dishonesty or false statement" (citation omitted)); *accord People v. Williams*, 951 N.Y.S. 2d 281, 282 (N.Y. App. Div. 2012) (stating that petit larceny is a crime "involving individual dishonesty"); *State v. Hardison*, 705 S.W. 2d 684, 686 (Tenn. Crim. App. 1985) (stating that petit larceny is "a crime of dishonesty" (citations omitted)).

Because the larceny conviction was potentially *relevant*, it could be used to discount Ms. Williams's complaints even if the conviction might have been considered inadmissible under the federal or state rules of evidence.[39]

### D.   Conviction for Violation of a Protective Order

The ALJ also noted that the Plaintiff had a deferred sentence for violation of a protective order.[40]  But the ALJ did not say that he was discounting the complaints based on this conviction.  Instead, the judge relied solely on the convictions for DUI and larceny.[41] Thus, the Court need not decide whether the ALJ could have discounted Ms. Williams's complaints based on her violation of a protective order.

### E.   Unemployment Benefits

Ms. Williams also argues that the judge erred in discounting her credibility based on receipt of unemployment benefits.  This argument confuses the judge's reasoning.  The judge discounted Ms. Williams's credibility based on inconsistencies in her testimony rather than her receipt of benefits.

She testified that she had quit working because she had been laid off — not because she was disabled.[42]   After losing her job, Ms. Williams could obtain unemployment

---

[39]     *See supra* p. 9.

[40]     R. at p. 18; *see id.* at pp. 56, 213.

[41]     R. at p. 16.

[42]     R. at pp. 35-36.

compensation only by representing to the State each week that she was ready, willing, and able to work.[43]   The judge could reasonably consider Ms. Williams's testimony as inconsistent with her weekly representations of an ability to work.  That inconsistency could reasonably have led the ALJ to discount Ms. Williams's complaints.[44]

>F.   Selectivity in the ALJ's Discussion of Evidence

The Plaintiff argues that the ALJ was selective, focusing on daily activities while ignoring evidence involving the need for encouragement and two hospitalizations with suicidal thoughts.  These arguments are incorrect.

>Encouragement to Do Housework

The Plaintiff's contentions are based in part on a misreading of the ALJ's opinion. The ALJ reasoned in part that Ms. Williams's account of her daily routine had differed from her mother's account.[45]   According to the Plaintiff, the ALJ's reasoning was selective because Ms. Williams needed encouragement to perform housework.

Ms. Williams's argument confuses the ALJ's rationale.  The ALJ didn't question Ms. Williams's account based on the significance of her activities; instead, the ALJ questioned

---

[43]      R. at pp. 62-63, 65-66.

[44]      *See Spiva v. Barnhart*, Case No. CIV-01-1783-M, slip op. at 20-21 (W.D. Okla. Jan. 13, 2003) (unpublished report and recommendation by magistrate judge) (stating that an administrative law judge could reasonably draw inferences about the claimant's credibility from his application for benefits under Oklahoma's unemployment statutes), *adopted* (W.D. Okla. Mar. 5, 2003) (unpublished order by district judge).

[45]      R. at p. 18.

the Plaintiff's account because it had differed from her mother's account.[46]  How could this rationale have changed if the ALJ had acknowledged the need for encouragement of Ms. Williams?  The Plaintiff doesn't say, and the connection between the two is not readily apparent.

<u>Suicidal Thoughts</u>

The same is true of the Plaintiff's argument involving selectivity in the discussion of suicidal thoughts.

The Plaintiff testified that she had suicidal thoughts "pretty much everyday."[47]  The administrative law judge questioned this testimony, stating that the treatment notes did not indicate daily thoughts about suicide.[48]  The Plaintiff challenges this statement, arguing that the judge should have mentioned two hospitalizations with suicidal thoughts.[49]  But the ALJ had no duty to discuss the two hospitalizations.

Discussion would have been necessary only if the hospitalizations had been *significantly probative.*[50]  Their significance depends on what the ALJ had found at steps two and four.

---

[46]    R. at p. 18.

[47]    R. at p. 36.

[48]    R. at p. 19.

[49]    R. at p. 8; *see id.* at pp. 341, 410.

[50]    *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).

At step two, the ALJ found that the Plaintiff had severe impairments involving depression, schizoaffective disorder, post-traumatic-stress disorder, anxiety, and borderline-personality disorder.[51]

At step four, the ALJ discussed the Plaintiff's treatment for depression, schizoaffective disorder, and post-traumatic-stress disorder.[52]  This discussion included references to the two hospitalizations with suicidal thoughts.[53]  Acknowledging the treatment for depression, schizoaffective disorder, and post-traumatic-stress disorder, the ALJ found at step four that the Plaintiff could not interact with the general public and could only perform simple tasks with routine supervision and relate superficially to supervisors and peers.[54]

The Plaintiff's argument assumes that these limitations should have been even greater because of her two hospitalizations with thoughts about suicide.  But, why?  The Plaintiff doesn't say what the two hospitalizations would have added to the findings on mental limitations when the ALJ had already acknowledged bipolar disorder, depression, schizoaffective disorder, post-traumatic-stress disorder, anxiety, and borderline personality.[55]

---

[51]    R. at p. 14.

[52]    R. at p. 19.

[53]    R. at p. 19 (citing Exhibits 3F and 9F).

[54]    R. at p. 17.

[55]    *See Bridges v. Barnhart*, 162 F. App'x 828, 830-31(10th Cir. 2006) (stating that the ALJ was not required to discuss a medical examiner's report because it did not contain any evidence "contrary to the ALJ's findings").

The Plaintiff's failure to explain the impact is fatal because the two hospitalizations would be considered *significantly probative* only if they had shown something material to the ALJ's findings.  Because the Plaintiff hasn't identified anything material about the hospitalizations, they would not be considered *significantly probative*.  Thus, the ALJ had no duty to further discuss the two hospitalizations.

G.    Summary

In summary, Ms. Williams has not shown an error in the ALJ's assessment of credibility.

VI.    Proposed Ruling

I recommend that the Court affirm the administrative decision.

VII.    Notice of the Right to Object

Any party may file written objections with the Clerk of the United States District Court, Western District of Oklahoma by December 7, 2012,[56] and the failure to timely object could prevent an appeal of the suggested ruling.[57]

---

[56]    *See* 28 U.S.C.A. § 636(b)(1) (West 2011 supp.); Fed. R. Civ. P. 6(d), 72(b)(2).

[57]    *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

VIII.    <u>Status of the Referral</u>

The referral is discharged.

Entered this 20th day of November, 2012.


_____
Robert E. Bacharach
United States Magistrate Judge